IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADVANTAGEOUS COMMUNITY
SERVICES, LLC, ARMINDER KAUR,
HARASPAL SINGH, and HARCHI SINGH,

      Plaintiffs,

v.                                           1:17-cv-00525-LF-KK

GARY KING, AMY LANDAU,
ELIZABETH STALEY, MARC
WORKMAN, CATHY STEVENSON,
ORLANDO SANCHEZ, and
WALTER RODAS,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on defendants Gary King, Amy Landau, Elizabeth Staley, Mark Workman, Cathy Stevenson, Orlando Sanchez, and Walter Rodas's (collectively "State Defendants") Motion to Dismiss (Doc. 20), filed July 12, 2017. Plaintiffs filed their Response to Defendants' Motion to Dismiss (Doc. 25) on August 7, 2017. State Defendants filed their Reply in Support of Motion to Dismiss (Doc. 26) on August 22, 2017. Having read the submissions of the parties and being fully advised, and for the following reasons, the Court GRANTS the State Defendants' Motion to Dismiss in part, and DENIES it in part.

## I.    <u>Relevant Facts</u>

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all facts alleged in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It also must view these factual allegations in the light most favorable to the plaintiff. *See id.* Viewing the facts alleged in the complaint in this manner, the complaint establishes the following:

In September 2009, the State of New Mexico, through the New Mexico Attorney General's Office, brought a lawsuit against Advantageous Community Services, LLC ("Advantageous"). Doc. 1-1 ¶ 22. The case was captioned *State of New Mexico ex rel. Gary K. King, Attorney General v. Advantageous Community Services, LLC*, D-202-CV-2009-11396. Doc. 1-1 ¶ 22. At the time, Gary King was the New Mexico Attorney General, and Amy Landau was an attorney in his office. *Id.* ¶¶ 6, 7. Elizabeth Staley also was an attorney at the Attorney General's Office, and was Director of the Medicaid Fraud and Elder Abuse Division there. *Id.* ¶ 8. Marc Workman was an investigator for the Attorney General's Office. *Id.* ¶ 9. Cathy Stevenson was the Director of the Developmental Disabilities Support Division for the New Mexico Department of Health. *Id.* ¶ 10. Orlando Sanchez and Walter Rodas both were employees of the New Mexico Department of Health. *Id.* ¶¶ 11, 12.

Advantageous is a New Mexico business that provided home-based care to Medicaid recipients pursuant to the Developmental Disabilities Waiver Program. *Id.* ¶ 16. Dr. Arminder Kaur is the owner of Advantageous. *Id.* ¶ 2. Haraspal and Harchi Singh are Dr. Kaur's sons and were employed by Advantageous. *Id.* ¶¶ 3, 4.

The State's lawsuit against Advantageous alleged that between 2004 and 2007, six Advantageous caregivers billed and were paid for services while the caregivers lacked appropriate criminal history screening, which allegedly violated federal Medicaid statutes. *Id.* ¶ 23. None of the caregivers, however, had any disqualifying criminal convictions, which the State readily could have discovered with adequate investigation. *Id.* ¶ 24. Plaintiffs allege that the State and the defendants involved in the prosecution of the State's lawsuit did not have a factual or legal basis to pursue the State's claims against Advantageous under the New Mexico Medicaid Fraud Act. *Id.* ¶ 35.

The State, through Attorney General King, attorneys Landau and Staley, and investigator Workman (collectively referred to as the "AG Defendants"), brought suit against Advantageous and other similar providers in an effort to force the providers to make payments to the State regardless of the merits of the State's claims. *Id.* ¶ 25. The AG Defendants engaged in this practice over a period of time in a "Shake-down" program designed to collect nuisance settlements that providers like Advantageous would pay to avoid the costs of defending the State's lawsuits or to avoid other negative consequences stemming from such suits. *Id.* The AG Defendants, in preparing the State's case against Advantageous, used discovery and other evidence gathering procedures to enable the State to pursue criminal charges against Advantageous under the New Mexico Fraud Act or other criminal statutes if it so chose. *Id.* ¶ 26. The State's claims and allegations against Advantageous involved Dr. Kaur and his sons' work at Advantageous, and those claims and allegations disrupted Advantageous's business activities, impacted its ability to secure alternative business, and impacted Dr. Kaur and his sons' ability to obtain alternative employment. *Id.* ¶ 27

During the course of the State's lawsuit against Advantageous, plaintiffs discovered that the State Defendants had fabricated evidence to support the State's case against Advantageous. *Id.* ¶ 28. Advantageous brought this conduct to the attention of the court in the state case. *Id.* In retaliation, the AG Defendants, in conjunction with Director Stevenson, in 2011 withheld substantial funds that were owed to Advantageous for Medicaid services it provided during the term of its state contract. *Id.* ¶ 31. The AG Defendants and Director Stevenson effectuated improper recoupments to the State before proving any claims against Advantageous. *Id.* Even before 2011, the AG Defendants and Director Stevenson for years applied unwarranted withholdings from funds owed to Advantageous before proving any claims against

Advantageous.  *Id.* ¶ 32.  In connection with the State's lawsuit against Advantageous, the AG Defendants and Director Stevenson imposed an improper moratorium on business with Advantageous, again before proving any claims against Advantageous.  *Id.*  According to plaintiffs, this conduct constituted extra-judicial forfeiture proceedings against Advantageous without any court involvement at any stage.  *Id.* ¶ 33.

Meanwhile, the New Mexico Department of Health, through Director Stevenson, terminated and refused to renew Advantageous's Medicaid contract.  *Id.* ¶ 29.  During a deposition in May, 2011, Attorney Landau stated on the record that the New Mexico Attorney General's Office consulted with the New Mexico Department of Health on the Department's decision to terminate Advantageous's Medicaid contract.  *Id.* ¶ 30.  Plaintiffs believe that Attorney General King and attorney Staley also were involved in this decision, which was part of the improper conduct intended to damage Advantageous.  *Id.* ¶ 29.  Plaintiffs allege that the termination and refusal to renew Advantageous's Medicaid contract was done in violation of Advantageous's substantive Due Process rights, in particular because the decision was arbitrary, irrational, and/or shocking to the contemporary conscience.  *Id.* ¶ 34.

The judge presiding over the state court proceeding granted summary judgment in favor of Advantageous based on the lack of evidence to support the State's claims as well as the State's fabrication of evidence submitted in connection with that proceeding.  *Id.* ¶ 36.  Because the State failed to keep adequate records, it could not present competent evidence to support any of its claims against Advantageous.  *Id.* ¶ 37.  The State also had no legal basis to pursue its claims against Advantageous under the Medicaid Fraud Act or any other law.  *Id.*  The regulations that the State accused Advantageous of violating were not an appropriate basis for the State's claims against Advantageous because compliance with the regulations was not a

condition of payment for moneys owed to Advantageous. *Id.* Further, there were never grounds to pursue claims against Advantageous for violations of the criminal-history screening requirements under the Medicaid Fraud Act because that Act does not provide for such a claim. *Id.* ¶ 44.

The judge also ruled that the State engaged in egregious misconduct by fabricating evidence. *Id.* ¶ 38. The judge found that Attorney Landau used a letter in the litigation that had been fabricated by Investigator Workman and Department of Health employees Sanchez and Rodas. *Id.* Specifically, Investigator Workman was unable to find clearance letters for two of Advantageous's caregivers in the State's own records. *Id.* Investigator Workman contacted Rodas at the Department of Health to see if the Department of Health had copies of the letters. *See id.* Department of Health employees informed Investigator Workman that the Department did not keep copies of the requested clearance letters, and informed Workman of the inaccuracies that would be contained in re-created letters. *See id.* Department of Health employees Sanchez and Rodas re-created the letters even though they knew the letters would contain inaccurate information. *See id.* Investigator Workman received the re-created letters and provided them to attorney Landau knowing that they were false and inaccurate. *See id.* Investigator Workman knew that the fabricated letters were to be used in connection with the litigation against Advantageous. *See id.*

The state judge entered summary judgment against the State with prejudice. *Id.* ¶ 40. The State appealed the judge's ruling. *Id.* The New Mexico Court of Appeals affirmed the state district court's ruling on June 9, 2014,[1] based on the State's use of fabricated evidence. *Id.* ¶ 42.

---

[1] The New Mexico Court of Appeals opinion shows that it was issued on April 28, 2014. *State ex rel. King v. Advantageous Community Services, LLC*, 2014-NMCA-076, 329 P.3d 738.

Advantageous administratively appealed the State's decision to terminate and refusal to renew its Medicaid contract. *Id.* ¶ 43. Those proceedings terminated on July 2, 2014. *Id.* Advantageous asserts that it has exhausted its administrative remedies. *Id.* ¶ 45.

## II.    **The Complaint**

Count I of the complaint, brought under 42 U.S.C. § 1983, alleges that the State Defendants violated the plaintiffs' Fourth and Fourteenth Amendment rights by maliciously prosecuting Advantageous and misusing judicial proceedings. *Id.* ¶¶ 47–58. This claim is based on the State Defendants' fabrication of evidence and the plaintiffs' allegation that the State Defendants lacked probable cause to initiate proceedings against Advantageous. *See id.* Count I further alleges that the State Defendants used extra-judicial forfeiture proceedings against Advantageous to withhold and recoup funds owed to Advantageous for Medicaid services it had provided. *Id.* ¶ 59.

Count II of the complaint, also brought under 42 U.S.C. § 1983, alleges that the State Defendants violated the plaintiffs' rights under the Fourth and Fourteenth Amendments by fabricating evidence against the plaintiffs. *Id.* ¶¶ 62–65. Count III of the complaint, also brought under 42 U.S.C. § 1983, alleges that the State Defendants violated the plaintiffs' Due Process rights under the Fourteenth Amendment by terminating and refusing to renew Advantageous's Medicaid contract in an arbitrary and capricious manner, and in a manner that shocks the conscience. *Id.* ¶¶ 67–71.

## III.    **Discussion**

The State Defendants argue in their motion to dismiss that the individual plaintiffs' claims should be dismissed because they lack standing to sue. Doc. 20 at 5–6. The State Defendants also argue that plaintiffs lack a protected property interest necessary to state a constitutional claim under 42 U.S.C. § 1983. *Id.* at 6–7. The State Defendants further argue that

they are absolutely immune from suit, but if not absolutely immune, they are entitled to qualified immunity. *Id.* at 7–11. And lastly, the State Defendants claim that the plaintiffs' claims are barred by the statute of limitations. *Id.* at 11–12.

Plaintiffs respond that they have standing to sue because they suffered damages as a result of the State Defendants' misconduct. Doc. 25 at 2–4. They also argue that they have protected property and liberty interests sufficient to state a constitutional claim under 42 U.S.C. § 1983, and that they have adequately alleged violations of their Fourth Amendment rights as well as violations of their procedural and substantive Due Process rights. *Id.* at 4–15. They further contend that no defendant is entitled to either absolute or qualified immunity. *Id.* at 15–21. And finally, they argue that their claims are timely. *Id.* at 22–24. The Court will address the parties' arguments with respect to each count of the complaint as necessary.

### A. Motions to Dismiss Generally

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "'a court must accept as true all of the allegations contained in a complaint,'" this rule does not apply to legal conclusions. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id.* (citation omitted). A complaint survives only if it "states a plausible claim for relief." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). But a court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Id.* (internal quotation marks omitted) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)). In determining whether to grant the motion, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

### B. Section 1983 Claims and Qualified Immunity Generally

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must allege that a defendant acted under color of state law to deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The plaintiff also must identify an "affirmative link" between the alleged constitutional violation and each individual defendant. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the Tenth Circuit's two-part test for evaluating qualified immunity, the plaintiff must show (1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established when the alleged violation occurred. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998); *accord Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Unless both prongs are satisfied, the defendant will not be required to "engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

The Court is not required to address the two prongs of the test in order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Supreme Court's decision in *Pearson* permits courts to grant qualified immunity without first deciding whether a constitutional violation occurred so long as the right claimed to be violated was not clearly established. *Id.* The right that is alleged to have been violated must be "clearly established" not just as a general proposition (for example, in the way the right to free speech is clearly established), but "in a more particularized . . . sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson*, 483 U.S. at 640. Stating the right too broadly would destroy the balance that the Supreme Court has sought to establish "between the interests in vindication of citizens' constitutional rights and . . . public officials'

effective performance of their duties by making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Id.* at 639 (quotation and citation omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (internal quotations omitted). "The plaintiff is not required to show, however, that the very act in question previously was held unlawful . . . to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (internal quotations omitted). The degree of specificity required depends on the egregiousness of the challenged conduct; "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity therefore protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### C. Plaintiffs' Claims

#### 1. *Malicious Prosecution Claim*

To state a claim for malicious prosecution under § 1983, plaintiffs must allege facts to support the following elements: (1) the defendants caused plaintiffs' continued confinement or prosecution; (2) the original action terminated in favor of plaintiffs; (3) no probable cause supported the original arrest, continued confinement, or prosecution of plaintiffs; (4) the defendants acted with malice; and (5) plaintiffs sustained damages. *Sanchez v. Hartley*, 810

F.3d 750, 754 n.1 (10th Cir. 2016) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

### a. "Standing"

At the outset, it's plain that the individual plaintiffs cannot state a claim against the State Defendants for malicious prosecution because they were not prosecuted in the underlying action. The State Defendants couch this argument in terms of standing, but it really boils down to an inability to state a claim under Rule 12(b)(6) for malicious prosecution. Although the individual plaintiffs may be able to plead sufficient facts to satisfy the fifth element of a malicious prosecution claim—that they sustained damages—they cannot satisfy the first, second and third elements because they were not a party to the lawsuit. The individual plaintiffs' claims against the State Defendants for malicious prosecution will be dismissed with prejudice.

### b. Protected Property Interest

The State Defendants argue that Advantageous cannot sustain its malicious prosecution claim because it did not have a protected property interest of which it was deprived. *See* Doc. 20 at 6–7. They argue that Advantageous had no protected property interest in continuing as a Medicaid services provider. *See id.* In response, Advantageous does not contest that it does not have a protected property interest in continuation of its status as a Medicaid services provider. *See* Doc. 25 at 4. It argues, however, that this is not the only property or liberty interest that the State Defendants "seized." *See id.* Advantageous points to its allegation in the complaint that the State Defendants seized funds "previously paid to Advantageous and lawfully owed to Advantageous." *Id.*; *see also* Doc. 1-1 ¶¶ 31–33. Plaintiffs also argue that the State Defendants seized their "liberty interest, in that [their] good name, reputation, honesty, and integrity are

jeopardized because due process was denied [them]." Doc. 25 at 4 (quoting *Koerpel v. Heckler*, 797 F.2d 858, 865–66 (10th Cir. 1986)).

The State Defendants are correct in their assertion that Advantageous does not have a protected property interest in its continued status as a Medicaid provider. As was true in *Koerpel*, although Advantageous lost income as a result of the termination of its Medicaid contract, Advantageous does not allege facts that demonstrate it was *entitled* to continue as a Medicaid services provider. *See Koerpel*, 797 F.2d at 864. "[A] property right must be based on an independent source such as a law, rule, or mutually explicit understanding." *Id.* "Where the government retains the right to terminate a contractual relationship in its sole discretion, the party contracting with the government does not have a constitutionally-protected property interest in the continuation of the relationship." *Rainbow Dental, LLC v. DentaQuest of New Mexico, LLC*, 15cv1002 MCA/LF, Doc. 96 at 4, (D.N.M. Sept. 30, 2016).

However, as plaintiffs note, the complaint also alleges that the State Defendants seized funds that Advantageous already had earned and/or that already had been paid to Advantageous. *See* Doc. 1-1 ¶¶ 31–33. The Court accepts these facts as true for the purposes of this motion. The State Defendants do not argue that these funds are not a constitutionally-protected property interest. *See* Doc. 20 at 6–7; Doc. 26 at 3–4. Thus, Advantageous has alleged the seizure of a constitutionally-protected property interest sufficient to sustain its malicious prosecution claim.[2]

---

[2] Plaintiffs also assert that the defendants' malicious prosecution of them deprived them of their liberty interests. As the Court already has determined that the individual plaintiffs cannot state a claim for malicious prosecution because they were not parties to the state's lawsuit against Advantageous, the question becomes whether Advantageous itself has sufficiently alleged in the complaint that the defendants deprived it of a constitutionally-protected liberty interest. Because I find that Advantageous has alleged a constitutionally-protected property interest sufficient to support its malicious prosecution claim, it is not necessary to also decide whether it has alleged a constitutionally-protected liberty interest.

### c. Absolute Immunity

Absolute prosecutorial immunity is a complete bar to a suit for damages under 42 U.S.C. § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976). Prosecutors are absolutely immune for those activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430. "[S]tate attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings [also] are absolutely immune from suit under section 1983 concerning activities intimately associated with the judicial . . . process." *Scott v. Hern*, 216 F.3d 897, 908–09 (10th Cir. 2000) (internal quotations and citations omitted). To determine whether absolute immunity applies, the Supreme Court has created a "functional approach" by which courts examine only the actions taken by the prosecutor "in initiating [ ] and in presenting the State's case" for trial. *Imbler*, 424 U.S. at 431. The Supreme Court has noted, however, that not every activity of a prosecutor involves initiating and presenting a case. Absolute immunity does not extend to "those aspects of the prosecutor's responsibility that cast him [or her] in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31.

The State Defendants argue that they all are entitled to absolute immunity because they were performing functions analogous to those of a prosecutor. Doc. 20 at 7. Plaintiffs respond that no defendant is entitled to absolute immunity. Doc. 25 at 15–18. Specifically, they argue that because the Supreme Court has held that a prosecutor who fabricated evidence during an investigation was not entitled to absolute immunity, the defendants here are not entitled to absolute immunity because they fabricated evidence to support their case. *See* Doc. 25 at 16–17 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)). Plaintiffs also assert that they are only

suing the State Defendants for acts they conducted as investigators or administrators, not as prosecutors. *Id.* at 16–18.

Based on the allegations in the complaint, the only individuals who appear to have been performing functions analogous to those of a prosecutor were Attorney General King and the two lawyers in his office, Ms. Landau and Ms. Staley. *See* Doc. 1-1 ¶¶ 6–8. These individuals were responsible for bringing the case against Advantageous for Medicaid fraud. *See, e.g.*, *id.* ¶¶ 22, 25, 26. However, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991). Here, the State Defendants have made no effort to address each official and his or her particular function in prosecuting the case against Advantageous to determine whether that official is entitled to qualified immunity for that function. *See* Doc. 20 at 7; Doc. 26 at 4–5. Indeed, it seems nearly impossible to do so at this stage of the proceedings. In their reply, the State Defendants argue that the "fabrication of evidence"—on which plaintiffs heavily rely in urging the Court to find that absolute immunity does not apply—is a mischaracterization of what actually occurred. *See* Doc. 26 at 5. But addressing this argument would require the Court to consider facts not contained in the complaint, which is not permitted. At this stage of the proceedings, the State Defendants have not met their burden in establishing that absolute immunity applies.

### d. Qualified Immunity

The State Defendants do not address the malicious prosecution claim separate and apart from the other two counts in the complaint in addressing whether they are entitled to qualified immunity. *See* Doc. 20 at 8–11. Instead, they recite the general law applicable to qualified immunity, then argue generally that plaintiffs' Fourteenth Amendment rights were not violated,

plaintiffs were not denied access to the courts, and that there was no violation of the Fourth and Fourteenth Amendments. *See id.* Although I agree with some of the State Defendants' contentions, plaintiffs have pled sufficient facts to state a malicious prosecution claim based on a Fourth Amendment violation.

With respect to Advantageous's malicious prosecution claim, the State Defendants argue that "[t]here is no clearly established, constitutionally protected interest in avoiding suit or investigation into fraudulent practices." Doc. 20 at 10. The State Defendants also assert that Advantageous's "allegations are too vague to meet the standard required for establishing a section 1983 claim," and that there was no violation of the Fourth Amendment. *Id.* at 11.

Advantageous alleges in its complaint that the State Defendants brought their suit against it without probable cause and based on fabricated evidence. *See* Doc. 1-1 ¶¶ 49–58. The state district judge's ruling and the Court of Appeals' affirmance of that ruling, lend support to these allegations. Thus, although there may not be a constitutional right to avoid being sued, bringing suit without a factual basis and which results in an unreasonable seizure has been held to violate the Fourth Amendment. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1291–97 (10th Cir. 2004) (describing a Fourth Amendment malicious prosecution claim). Also, as discussed above, Advantageous alleges that the State Defendants seized funds that Advantageous already had earned and/or that already had been paid to it in conjunction with the State's prosecution against Advantageous. *See* Doc. 1-1 ¶¶ 31–33. This alleged seizure, if done in conjunction with a lawsuit based on fabricated evidence and without probable cause, is sufficient to state a Fourth Amendment malicious prosecution claim. *See Sanchez*, 810 F.3d at 754 ("Fourth Amendment prohibits officers from knowingly or recklessly relying on false information to institute legal process when that process results in an unreasonable seizure"); *see also Becker v. Kroll*, 494

F.3d 904, 914–16 (10th Cir. 2007) (a malicious prosecution claim under the Fourth Amendment requires an unreasonable seizure).  At this stage of the proceedings, Advantageous's allegations are sufficient to state a claim for malicious prosecution under the Fourth Amendment.

However, to the extent that Advantageous's malicious prosecution claim is based on violations of the Fourteenth Amendment rather than the Fourth Amendment, *see* Doc. 1-1 ¶ 48 (stating that defendants' malicious prosecution "violated Plaintiffs' rights under the Fourth Amendment in addition to the substantive and procedural protections afforded under the Due Process Clause of the Fourteenth Amendment"), that claim will be dismissed with prejudice. Neither the Supreme Court nor the Tenth Circuit has recognized a malicious prosecution claim under the Fourteenth Amendment.  *See Albright v. Oliver*, 510 U.S. 266, 275 (1994) (holding that arrest without probable cause did not constitute violation of arrestee's substantive Due Process rights; claim must be analyzed under the Fourth Amendment); *Becker*, 494 F.3d at 919–22 ("no § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment" and rejecting theories of liability under procedural Due Process).  Because neither the Supreme Court nor the Tenth Circuit has recognized a malicious prosecution claim under the Fourteenth Amendment, the law governing the alleged conduct is not clearly established.  The State Defendants therefore are entitled to qualified immunity on this aspect of Advantageous's malicious prosecution claim.  To the extent that the malicious prosecution claim is based on a violation of the Fourteenth Amendment, it will be dismissed with prejudice.

e.  Statute of Limitations

The parties agree that the applicable statute of limitations is the New Mexico statute that applies to personal injury claims.  *See* Doc. 20 at 11, Doc. 25 at 23; *see also* N.M. STAT. ANN.

§ 37-1-8 ("Actions must be brought . . . for an injury to the person or reputation of any person[]

within three years."). Although state law provides the statute of limitations to be applied, federal

law governs when the limitations period begins to run. *Wallace v. Kato*, 549 U.S. 384, 388

(2007). A malicious-prosecution claim is not cognizable until all the elements are satisfied, and

one of the elements is that the original action be terminated in favor of the plaintiff. *Wilkins v.

DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). As such, a malicious-prosecution claim does not

accrue until proceedings terminate in the plaintiff's favor. *Mondragon v. Thompson*, 519 F.3d

1078, 1083 (10th Cir. 2008). Here, because the State appealed the district court's judgment, the

proceedings did not terminate until the Court of Appeals affirmed the district court's judgment,

which occurred on April 28, 2014. *See State ex rel. King v. Advantageous Community Services,

LLC*, 2014-NMCA-076, 329 P.3d 738. Plaintiffs filed their complaint in this case on April 7,

2017, within the three-year statute of limitations. *See* Doc. 1-1 at 1. The malicious prosecution

claim is timely.

### 2. *Fabrication of Evidence Claim*

Plaintiffs' fabrication-of-evidence claim, to the extent that it is not part of their malicious

prosecution claim, is essentially a claim that the State Defendants denied plaintiffs due process

by fabricating evidence in the State's case against Advantageous. To state a § 1983 fabrication-

of-evidence claim, plaintiffs must allege that (1) defendants deliberately fabricated evidence, and

(2) the deliberate fabrication caused the deprivation of the plaintiffs' property. *See Spencer v.

Peters*, 857 F.3d 789, 798 (9th Cir. 2017) ("To prevail on a § 1983 claim of deliberate

fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence

and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty."). Because the

state judge dismissed the case against Advantageous based on the fabricated evidence, the

deliberate fabrication of that evidence did not deprive Advantageous (or any other plaintiff) of any property. Thus, there was no Due Process violation, and the State Defendants are entitled to qualified immunity on this claim.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST., Article XIV. The fabrication of evidence—like the suppression of exculpatory evidence—only matters if it deprives any person of a fair trial and thereby deprives the person of liberty or property. *See Becker*, 494 F.3d at 924 (defendants' suppression of exculpatory evidence did not violate doctor's Due Process rights because criminal case against doctor was dismissed before trial); *Bianchi v. McQueen*, 818 F.3d 309, 319–20 (7th Cir. 2016) (fabrication of evidence did not violate plaintiffs' Due Process rights and could not support a § 1983 claim against special prosecutor and investigators because plaintiffs were acquitted at their criminal trials); *see also United States v. Bagley*, 473 U.S. 667, 678 (1985) ("[S]uppression of evidence amounts to a constitutional violation only if it deprived the defendant of a fair trial."); *Taylor v. Waters*, 81 F.3d 429, 436 n.5 (4th Cir. 1996) (allowing no § 1983 claim based on withholding of exculpatory evidence where plaintiff did not go to trial). As the Seventh Circuit has explained, "an act of evidence fabrication doesn't implicate due-process rights *unless* the fabricated evidence is later used to deprive" the person of life, liberty or property. *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (emphasis in original). "A deprivation of liberty [or property] is a necessary element of a due-process claim premised on allegations of evidence fabrication." *Id.* "[I]f an officer (or investigating prosecutor) fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty [or property] interest." *Id.* (quoting

*Whitlock v. Brueggermann*, 682 F.3d 567, 580 (7th Cir. 2012)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 281 (1993) (Scalia, J., concurring) ("I am aware of[] no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution.").

In this case, Advantageous alleges that the State Defendants fabricated evidence against Advantageous during the course of the State's lawsuit against it. Doc. 1-1 ¶¶ 28, 38, 41. Thus, although the State Defendants did more than put the fabricated evidence in a drawer, when Advantageous brought the fabricated evidence to the attention of the judge presiding over the lawsuit, the judge dismissed the case against Advantageous with prejudice. *See id.* ¶¶ 28, 36, 38–40. The New Mexico Court of Appeals affirmed the district judge's dismissal as a sanction for the creation of false documents. *State ex rel. King v. Advantageous Community Services, LLC*, 2014-NMCA-076, ¶ 26, 329 P.3d 738, 745; Doc. 1-1 ¶ 42. In short, Advantageous received due process. The case against it was dismissed with prejudice. The state court's dismissal of the lawsuit prevented the State Defendants from using the fabricated evidence at trial to deprive Advantageous or any other plaintiff of any property. Thus, to the extent that plaintiffs' fabrication-of-evidence claim against the State Defendants in count II is based on a Fourteenth Amendment Due Process claim, that claim is dismissed with prejudice.

To the extent that plaintiffs' fabrication-of-evidence claim is based on the Fourth Amendment, the Court cannot distinguish that claim from Advantageous's malicious prosecution claim. In Count II, plaintiffs allege that the State "Defendants through egregious conduct violated Plaintiffs' right under the Fourth Amendment . . . through fabrication of evidence to pursue claims against Advantageous." Doc. 1-1 ¶ 63. They further allege that without this fabrication, the State "Defendants never would have pursued or continued claims against

Advantageous." *Id.* ¶ 64. Thus, as pled, the Fourth Amendment aspect of plaintiffs' fabrication-of-evidence claim is indistinguishable from its malicious prosecution claim, and the Court will consider the two claims merged. However, as explained above, because the individual plaintiffs were not parties to the State's suit against Advantageous, they cannot plead sufficient facts to state a malicious prosecution claim, and their fabrication-of-evidence claims will be dismissed with prejudice.

### 3. *Arbitrary and Capricious Conduct Claim*

"An arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause of the Fourteenth Amendment." *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999). But the arbitrariness must be extreme.

> The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges. It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power.

*Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (internal quotation marks and citations omitted). "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir.1995). This is a "high level of outrageousness." *Id.* Establishing these limits advances "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Id.* at 573 (internal citations omitted). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official

action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

In their complaint, plaintiffs identify two acts that they contend "shock the conscience." First, they say that the State Defendants' termination and refusal to renew Advantageous's Medicaid contract "was arbitrary, irrational, and/or shocking to the contemporary conscience." Doc. 1-1 ¶ 34; *see also id.* ¶ 68. Second, they also contend that the State Defendants "used baseless litigation in which they attempted to prove their claims through fabricated evidence as a ground for terminating and refusing to renew Advantageous's Medicaid contract," *id.* ¶ 70, which is included in their arbitrary and capricious count and presumably also is conscience-shocking.

Aside from the claim that the State Defendants fabricated evidence, the allegations in the complaint do not rise to the high level of outrageousness necessary to state a claim for arbitrary and capricious conduct under the Fourteenth Amendment. Plaintiffs allege that the New Mexico Department of Health consulted with the New Mexico Attorney General's Office in deciding to terminate and not renew Advantageous's contract, and that this decision was based on claims against Advantageous that had not been proven and were baseless. *See* Doc. 1-1 ¶¶ 30, 32, 34, 35. This conduct, although it may show that the State Defendants intentionally or recklessly caused injury to Advantageous by abusing or misusing government power, *see Moore*, 438 F.3d at 1040, it does not "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking," *Uhlrig*, 64 F.3d at 574. The Court has not found, nor have plaintiffs cited, a Tenth Circuit or Supreme Court case in which similar conduct has been found to "shock the conscience." *See* Doc. 25 at 13–15. Nor has the Court found cases in other circuits holding that similar conduct shocks the conscience. Thus, the law is not clearly

established that the State Defendants should have known that termination of and refusal to renew Advantageous's Medicaid contract based on unsubstantiated claims of Medicaid fraud violated Advantageous's substantive Due Process rights. The State Defendants are entitled to qualified immunity on this aspect of plaintiffs' claim.

Indeed, in response to the State Defendants' motion to dismiss, plaintiffs rely exclusively on the State Defendants' fabrication of evidence as sufficient "conscience shocking behavior" to satisfy their pleading requirements. *See* Doc. 25 at 14 ("Federal courts have expressly recognized that fabrication of evidence constitutes conscience shocking behavior given that 'government perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth Amendments guarantee of Due Process in our courts.'" (quoting *Hardwick v. County of Orange*, 844 F.3d 1112, 1119 (9th Cir. 2017)). Importantly, however, the plaintiff in *Hardwick* was removed from the custody of her mother when state social workers allegedly used perjured testimony and fabricated evidence to secure that removal. *Hardwick*, 844 F.3d at 1114. In other words, the social workers used the perjured testimony and fabricated evidence *successfully*; the plaintiff was removed from her mother's custody and was denied her constitutional right to her familial relationship with her mother. *See id.* Thus, the defendant social workers were not entitled to absolute or qualified immunity. *See id.* at 1115–21. Here, as explained above, when the fabricated evidence was brought to the attention of the judge presiding over the state case against Advantageous, the judge dismissed the case with prejudice. Thus, the fabricated evidence, though perhaps outrageous and reprehensible, did not deprive Advantageous of any property rights, and did not deprive it or any other plaintiff of procedural or substantive Due Process. Plaintiffs' arbitrary and capricious conduct claim will be dismissed in its entirety with prejudice.

## IV.   Conclusion

For the foregoing reasons, the Court GRANTS the State Defendants' Motion to Dismiss (Doc. 20) in part, and DENIES it in part.

(1) The individual plaintiffs' claims against the State Defendants in Count I for malicious prosecution are dismissed in their entirety with prejudice.  Advantageous's malicious prosecution claim against the State Defendants, to the extent that it is based on a violation of its Fourteenth Amendment substantive and procedural Due Process rights, is dismissed with prejudice.  The Court denies the State Defendants' Motion to Dismiss Advantageous's malicious prosecution claim to the extent that it is based on a Fourth Amendment violation.

(2) Plaintiffs' fabrication-of-evidence claim in Count II, to the extent that it is based on Fourteenth Amendment substantive and procedural Due Process rights, is dismissed with prejudice.  The individual plaintiffs' fabrication-of-evidence claims are dismissed with prejudice.  To the extent that Advantageous's fabrication-of-evidence claim is based on a Fourth Amendment violation, it is merged with the malicious prosecution claim in Count I.

(3) Plaintiffs' arbitrary and capricious conduct claim in Count III is dismissed with prejudice.

IT IS SO ORDERED.

Laura Fashing
United States Magistrate Judge