IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADVANTAGEOUS COMMUNITY
SERVICES, LLC, ARMINDER KAUR,
HARASPAL SINGH, and HARCHI SINGH,

    Plaintiffs,

v.                                                                                                                    1:17-cv-00525-LF-KK

GARY KING, AMY LANDAU,
ELIZABETH STALEY, MARC
WORKMAN, CATHY STEVENSON,
ORLANDO SANCHEZ, and
WALTER RODAS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on defendants Gary King, Amy Landau, Elizabeth Staley, Mark Workman, Cathy Stevenson, Orlando Sanchez, and Walter Rodas's (collectively "State Defendants") Motion to Dismiss[1] (Doc. 76), filed January 28, 2019. Plaintiffs filed their Response to Defendants' Motion to Dismiss (Doc. 87) on February 26, 2019. State Defendants filed their Reply in Support of Motion to Dismiss (Doc. 91) on March 13, 2019. Having read the submissions of the parties and being fully advised, and for the following reasons, the Court DENIES the State Defendants' Motion to Dismiss.

---

[1] A motion to dismiss under FED. R. CIV. P. 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Because the State Defendants have filed an answer, *see* Doc. 77, this motion is not timely under Rule 12(b)(6). But because the State Defendants may raise the same issues in motion for judgment on the pleadings under FED. R. CIV. P. 12(c), and because the same standards apply, *Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011), the Court will construe the State Defendants' motion to dismiss as a motion for judgment on the pleadings under Rule 12(c). As a motion for judgment on the pleadings, the motion is timely. *See* FED. R. CIV. P. 12(c) (motion must be filed "[a]fter the pleadings are closed—but early enough not to delay trial").

I.       **Relevant Facts**

In ruling on a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c), the Court must accept as true all facts alleged in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) ("We use the same standard when evaluating 12(b)(6) and 12(c) motions."). It also must view these factual allegations in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555. Viewing the facts alleged in the complaint in this manner, the complaint establishes the following:

In September 2009, the State of New Mexico, through the New Mexico Attorney General's Office, brought a lawsuit against Advantageous Community Services, LLC ("Advantageous"). Doc. 1-1 ¶ 22. The case was captioned *State of New Mexico ex rel. Gary K. King, Attorney General v. Advantageous Community Services, LLC*, D-202-CV-2009-11396. Doc. 1-1 ¶ 22. At the time, Gary King was the New Mexico Attorney General, and Amy Landau was an attorney in his office. *Id.* ¶¶ 6, 7. Elizabeth Staley also was an attorney at the Attorney General's Office, and was Director of the Medicaid Fraud and Elder Abuse Division there. *Id.* ¶ 8. Marc Workman was an investigator for the Attorney General's Office. *Id.* ¶ 9. Cathy Stevenson was the Director of the Developmental Disabilities Support Division for the New Mexico Department of Health. *Id.* ¶ 10. Orlando Sanchez and Walter Rodas both were employees of the New Mexico Department of Health. *Id.* ¶¶ 11, 12.

The only remaining plaintiff in this case is Advantageous,[2] which is a New Mexico business that provided home-based care to Medicaid recipients pursuant to the Developmental Disabilities Waiver Program. *Id.* ¶ 16.

---

[2] The Court dismissed the individual plaintiffs' claims on March 21, 2018. Doc. 31.

The State's lawsuit against Advantageous alleged that between 2004 and 2007, six Advantageous caregivers billed and were paid for services while the caregivers lacked appropriate criminal history screening, which allegedly violated federal Medicaid statutes. *Id.* ¶ 23. None of the caregivers, however, had any disqualifying criminal convictions, which the State readily could have discovered with adequate investigation. *Id.* ¶ 24. Plaintiffs allege that the State and the defendants involved in the prosecution of the State's lawsuit did not have a factual or legal basis to pursue the State's claims against Advantageous under the New Mexico Medicaid Fraud Act. *Id.* ¶ 35.

The State, through Attorney General King, attorneys Landau and Staley, and investigator Workman (collectively referred to as the "AG Defendants"), brought suit against Advantageous and other similar providers in an effort to force the providers to make payments to the State regardless of the merits of the State's claims. *Id.* ¶ 25. The AG Defendants engaged in this practice over a period of time in a "Shake-down" program designed to collect nuisance settlements that providers like Advantageous would pay to avoid the cost of defending against the State's lawsuits or to avoid other negative consequences stemming from such suits. *Id.* The AG Defendants, in preparing the State's case against Advantageous, used discovery and other evidence gathering procedures to enable the State to pursue criminal charges against Advantageous under the New Mexico Fraud Act or other criminal statutes if it so chose. *Id.* ¶ 26. The State's claims and allegations against Advantageous disrupted Advantageous' business activities and impacted its ability to secure alternative business. *Id.* ¶ 27

During the course of the State's lawsuit against Advantageous, Advantageous discovered that the State Defendants had fabricated evidence to support the State's case against it. *Id.* ¶ 28. Advantageous brought this conduct to the attention of the court in the state case. *Id.* In

retaliation, the AG Defendants, in conjunction with Director Stevenson, in 2011 withheld substantial funds that were owed to Advantageous for Medicaid services it provided during the term of its state contract. *Id.* ¶ 31. The AG Defendants and Director Stevenson effectuated improper recoupments to the State before proving any claims against Advantageous. *Id.* Even before 2011, the AG Defendants and Director Stevenson for years applied unwarranted withholdings from funds owed to Advantageous before proving any claims against Advantageous. *Id.* ¶ 32. In connection with the State's lawsuit against Advantageous, the AG Defendants and Director Stevenson imposed an improper moratorium on business with Advantageous, again before proving any claims against Advantageous. *Id.* According to Advantageous, this conduct constituted extra-judicial forfeiture proceedings against Advantageous without any court involvement at any stage. *Id.* ¶ 33.

The judge presiding over the state court proceeding granted summary judgment in favor of Advantageous based on the lack of evidence to support the State's claims as well as the State's fabrication of evidence submitted in connection with that proceeding. *Id.* ¶ 36. Because the State failed to keep adequate records, it could not present competent evidence to support any of its claims against Advantageous. *Id.* ¶ 37. The State also had no legal basis to pursue its claims against Advantageous under the Medicaid Fraud Act or any other law. *Id.* The regulations that the State accused Advantageous of violating were not an appropriate basis for the State's claims against Advantageous because compliance with the regulations was not a condition of payment for moneys owed to Advantageous. *Id.* Further, there were never grounds to pursue claims against Advantageous for violations of the criminal-history screening requirements under the Medicaid Fraud Act because that Act does not provide for such a claim. *Id.* ¶ 44.

The judge also ruled that the State engaged in egregious misconduct by fabricating evidence. *Id.* ¶ 38. The judge found that Attorney Landau used a letter in the litigation that had been fabricated by Investigator Workman and Department of Health employees Sanchez and Rodas. *Id.* Specifically, Investigator Workman was unable to find clearance letters for two of Advantageous's caregivers in the State's own records. *Id.* Investigator Workman contacted Rodas at the Department of Health to see if the Department of Health had copies of the letters. *See id.* Department of Health employees informed Investigator Workman that the Department did not keep copies of the requested clearance letters, and informed Workman of the inaccuracies that would be contained in re-created letters. *See id.* Department of Health employees Sanchez and Rodas re-created the letters even though they knew the letters would contain inaccurate information. *See id.* Investigator Workman received the re-created letters and provided them to attorney Landau knowing that they were false and inaccurate. *See id.* Investigator Workman knew that the fabricated letters were to be used in connection with the litigation against Advantageous. *See id.*

The state judge entered summary judgment against the State with prejudice. *Id.* ¶ 40. The State appealed the judge's ruling. *Id.* The New Mexico Court of Appeals affirmed the state district court's ruling on June 9, 2014,[3] based on the State's use of fabricated evidence. *Id.* ¶ 42.

Advantageous administratively appealed the State's decision to terminate and refusal to renew its Medicaid contract. *Id.* ¶ 43. Those proceedings terminated on July 2, 2014. *Id.* Advantageous asserts that it has exhausted its administrative remedies. *Id.* ¶ 45.

---

[3] The New Mexico Court of Appeals opinion shows that it was issued on April 28, 2014. *State ex rel. King v. Advantageous Community Services, LLC*, 2014-NMCA-076, 329 P.3d 738.

## II. The Complaint

The remaining claim in Count I of the complaint, brought under 42 U.S.C. § 1983, alleges that the State Defendants violated Advantageous' Fourth Amendment rights by maliciously prosecuting it and misusing judicial proceedings. *Id.* ¶¶ 47–58. This claim is based on the State Defendants' fabrication of evidence and Advantageous' allegation that the State Defendants lacked probable cause to initiate proceedings against it. *See id.* Count I further alleges that the State Defendants used extra-judicial forfeiture proceedings against Advantageous to withhold and recoup funds owed to Advantageous for Medicaid services it had provided. *Id.* ¶ 59.

## III. Discussion

The State Defendants argue in their motion to dismiss that Advantageous' malicious prosecution claim should be dismissed because "the Supreme Court has held that the Fourth Amendment only applies to personal detainment."[4] Doc. 76 at 4. They argue that because Advantageous itself was never physically seized, no Fourth Amendment violation occurred. *See id.* at 5−7. The State Defendants also argue that the attorney defendants are absolutely immune from suit because they were performing functions analogous to those of a prosecutor. *Id.* at 7−8. They further argue that all defendants are entitled to qualified immunity essentially because Advantageous has not identified a clearly established constitutional right that the defendants violated. *Id.* at 8–11. Finally, the State Defendants argue that Advantageous' malicious prosecution claim must be dismissed because it did not sue the State or any agency within the

---

[4] Not only do the State Defendants fail to cite any authority for this proposition, it is patently wrong. The Fourth Amendment, by its terms, protects against the unreasonable seizure of both persons and property. U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .").

6

State, and "the State and its agencies are necessary and indispensable parties." *Id.* at 11–12.

Advantageous responds that the Court already concluded that its complaint states a claim for malicious prosecution under the Fourth Amendment, and that that Court already held that defendants are not entitled to dismissal based on absolute or qualified immunity at this stage of the proceedings. Doc. 87 at 7−12. They also correctly argue that under 42 U.S.C. § 1983, Advantageous was required to name defendants in their individual capacities, and that neither the State nor any of its agencies are necessary parties to this litigation. *Id.* at 3−7. For the following reasons, the Court denies the State Defendants' second motion to dismiss.

### A. Motions to Dismiss Generally[5]

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "'a court must accept as true all of the allegations contained in a complaint,'" this rule does not apply to legal conclusions. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id.* (citation omitted). A complaint survives only if it "states a plausible claim for relief." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

---

[5] Because the same standards apply to motions to dismiss under FED. R. CIV. P. 12(b)(6) and motions for judgment on the pleadings under FED. R. CIV. P. 12(c), *Jacobsen*, 287 F.3d at 941 n.2, and because the State Defendants have labelled their motion as a "motion to dismiss," the Court will refer to both types of motions interchangeably.

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). But a court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Id*. (internal quotation marks omitted) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)). In determining whether to grant the motion, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

### B. Section 1983 Claims and Qualified Immunity Generally

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must allege that a defendant acted under color of state law to deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The plaintiff also must identify an "affirmative link" between the alleged constitutional violation and each individual defendant. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under the Tenth Circuit's two-part test for evaluating qualified immunity, the plaintiff must show (1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established when the alleged violation occurred. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998); *accord Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Unless both prongs are satisfied, the defendant will not be required to "engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

The Court is not required to address the two prongs of the test in order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Supreme Court's decision in *Pearson* permits courts to grant qualified immunity without first deciding whether a constitutional violation occurred so long as the right claimed to be violated was not clearly established. *Id.* The right that is alleged to have been violated must be "clearly established" not just as a general proposition (for example, in the way the right to free speech is clearly established), but "in a more particularized . . . sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson*, 483 U.S. at 640. Stating the right too broadly would destroy the balance that the Supreme Court has sought to establish "between the interests in vindication of citizens' constitutional rights and . . . public officials'

9

effective performance of their duties by making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Id.* at 639 (quotation and citation omitted).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (internal quotations omitted). "The plaintiff is not required to show, however, that the very act in question previously was held unlawful . . . to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (internal quotations omitted). The degree of specificity required depends on the egregiousness of the challenged conduct; "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity therefore protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### C. Advantageous' Claim

#### 1. *Malicious Prosecution Claim*

To state a claim for malicious prosecution under § 1983, Advantageous must allege facts to support the following elements: (1) the defendants caused Advantageous' continued confinement *or prosecution*; (2) the original action terminated in favor of Advantageous; (3) no probable cause supported the original arrest, continued confinement, or *prosecution* of

Advantageous; (4) the defendants acted with malice; and (5) Advantageous sustained damages. *See Sanchez v. Hartley*, 810 F.3d 750, 754 n.1 (10th Cir. 2016) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).

        a. <u>Physical Seizure/Violation of the Fourth Amendment</u>

The State Defendants argue that Advantageous cannot sustain its malicious prosecution claim because Advantageous itself was not seized. *See* Doc. 76 at 5–7. They base their argument entirely on the Tenth Circuit's decision in *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007). *See* Doc. 76 at 5. In response, Advantageous correctly points out that the Supreme Court has held that the seizure of property alone can support a Fourth Amendment malicious prosecution claim under § 1983. Doc. 87 at 8 (citing *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992)).

In *Becker*, Utah's Medicaid Fraud Control Unit (MFCU) investigated a doctor and ultimately civilly and criminally prosecuted her for over-billing the government for services to Medicaid patients in her care. *Becker*, 494 F.3d at 909. The MFCU eventually dropped its charges, and the doctor brought various claims against members of the MFCU, including a malicious prosecution claim under § 1983. *Id.* The district court granted summary judgment in favor of the defendants on the malicious prosecution claim, which the Tenth Circuit upheld, because the doctor could not show a seizure that violated the Fourth Amendment. *See id.* at 912−17.

The court in *Becker* examined the two types of seizures alleged there—seizure of a person and seizure of property—and determined that neither alleged seizure amounted to a Fourth Amendment violation. *See Becker*, 494 F.3d at 914−17. With respect to seizure of a person, which Advantageous does not allege and which is not at issue in this case, the Court held

11

that arrest or imprisonment is required. *Id.* at 914−15. The bringing of a criminal case by itself, without an arrest or some other form of physical detainment, was not sufficient to support a malicious prosecution claim. *Id.* at 915.

With respect to the seizure of property, the Tenth Circuit held that using an administrative subpoena to "seize" and copy the plaintiff's medical records was not a seizure in violation of the Fourth Amendment because "an investigatory or administrative subpoena is not subject to the same probable cause requirements as a search warrant," and the subpoena at issue "met the[] minimal requirements for Fourth Amendment reasonableness." *Id.* at 917. The Court did not hold that the unreasonable seizure of property, as opposed to the seizure of a person, could never form the basis of a malicious prosecution claim under § 1983. *See id.* at 916−17.

As the Court stated in its previous order, *see* Doc. 31 at 11−12, Advantageous' complaint alleges that the State Defendants seized funds that Advantageous already had earned and/or that already had been paid to Advantageous. *See* Doc. 1-1 ¶¶ 31–33. The Court accepts these facts as true for the purposes of this motion. The State Defendants do not argue that these funds are not a constitutionally-protected property interest. *See* Doc. 76 at 5–7; Doc. 91 at 2−3. The State Defendants instead argue that "Advantageous is claiming the withholding of payments by HSD," and that is constitutionally different from the seizure of the mobile home at issue in *Soldal*. Doc. 91 at 3; *see also Soldal*, 506 U.S. at 72 (allegation that defendants, acting under color of state law, dispossessed plaintiffs of their trailer by physically tearing it from its foundation and moving it to another lot, was sufficient to state § 1983 claim under the Fourth Amendment). They further argue that *Becker* requires an allegation that the State Defendants acquired physical control over Advantageous and/or its owners or officers. Doc. 91 at 2−3. But, as explained above, *Becker's* holding is not as broad as the State Defendants suggest.

Here, Advantageous has alleged that the State Defendants seized "substantial funds that were lawfully owed to Advantageous for Medicaid services rendered," that they "effectuated improper recoupments . . . before proving any claims against Advantageous," that they "had for years been applying unwarranted withholdings from funds lawfully owed to Advantageous," and that their conduct "constitute[d] extra-judicial forfeiture proceedings against Advantageous without any court involvement at any stage." Doc. 1-1 ¶¶ 31−33. In essence, Advantageous is alleging that the State Defendants seized funds that rightfully belonged to Advantageous without meeting any of the minimal requirements for Fourth Amendment reasonableness. Although the mechanism for seizing money obviously is different from seizing a mobile home, it is not obvious that that difference is necessarily of constitutional significance. And although Advantageous ultimately may not be able to prove that the seizures occurred or that they were unreasonable, at the pleading stage, their allegations are sufficient. *Becker* does not bar Advantageous' claims.

b. Absolute Immunity

Absolute prosecutorial immunity is a complete bar to a suit for damages under 42 U.S.C. § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976). Prosecutors are absolutely immune for those activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430. "[S]tate attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings [also] are absolutely immune from suit under section 1983 concerning activities intimately associated with the judicial . . . process." *Scott v. Hern*, 216 F.3d 897, 908–09 (10th Cir. 2000) (internal quotations and citations omitted).

To determine whether a state prosecutor's actions are shielded from liability under § 1983 by absolute immunity, courts apply "a functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993) (citation and quotations omitted). Thus, a prosecutor has absolute immunity for conduct that is "intimately associated with the judicial phase of the criminal process," but he or she is protected only by qualified immunity for "acts of investigation or administration." *Id.* at 270 (quotations omitted). "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* at 269 (quotation and alteration omitted).

Under the functional approach, a prosecutor's activities related to initiating and pursuing a criminal prosecution and presenting the state's case at trial are absolutely immune from liability. *See id.* A prosecutor's statements in the courtroom and in pleadings that are relevant to the subject matter of the proceeding are likewise absolutely immune. *See Imbler*, 424 U.S. at 426 n. 23. Even an allegation of malice is insufficient to overcome a claim of absolute immunity. *See id.* at 421–22. Thus, a prosecutor is shielded by absolute immunity from claims that he or she knowingly used false testimony in a trial. *See id.* at 413, 431. But when a prosecutor conducts investigative work normally performed by the police, that prosecutor is not performing a prosecutorial function. *See Buckley,* 509 U.S. at 273–74. Accordingly, the prosecutors in *Buckley* were not protected by absolute immunity on a claim that they worked alongside police to fabricate evidence against a suspect before there was probable cause to arrest him. *See id.* at 274–75.

The AG Defendants argue that they are entitled to absolute immunity because they were performing functions analogous to those of a prosecutor. Doc. 76 at 8. Advantageous responds

that its complaint alleges that the AG Defendants engaged in acts that did not include prosecutorial functions, including fabricating evidence to support the State's case against it, and wrongfully withholding and seizing funds belonging to Advantageous in "extra-judicial forfeiture proceedings." Doc. 87 at 10. These alleged actions do not clearly fall within the AG Defendants' prosecutorial functions. *See Buckley*, 509 U.S. at 272−76 (prosecutors who allegedly participated in creating false evidence during investigative stage of proceedings were not entitled to absolute immunity); *see id.* at 274 ("if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction") (internal quotation marks omitted). Because the AG Defendants bear the burden of proving that they are entitled to absolute immunity, and because delving into what each AG Defendant did in relation to the alleged fabrication of evidence and/or seizing funds outside of the judicial process would require consideration of evidence outside of the complaint, the AG Defendants are not entitled to absolute immunity based on the complaint alone.

    c. <u>Qualified Immunity</u>

The State Defendants argue that Advantageous' complaint fails to allege a violation of a clearly established constitutional right. Doc. 76 at 9−10. They further argue that the State Defendants' investigation and prosecution of Advantageous was objectively reasonable, and that they therefore are entitled to qualified immunity. *See id.* As the Court already has held, however, Advantageous has pled sufficient facts to support a violation of a clearly established Fourth Amendment right. *See* Doc. 31 at 14−16. And the Court cannot evaluate the objective reasonableness of the State Defendants' investigation and prosecution without considering facts not contained in the complaint, which is not permitted on a motion for judgment on the

15

pleadings. *See* FED. R. CIV. P. 12(c), (d). At this stage of the proceedings, Advantageous' allegations are sufficient to state a claim for malicious prosecution under the Fourth Amendment.

### d. Failure to Name a Necessary and Indispensable Party

The State Defendants make the entirely unsupportable argument that Advantageous' complaint should be dismissed because Advantageous failed to bring its claim against the State of New Mexico and its employees in their official capacities, rather than the individual defendants in their individual capacities.[6] *See* Doc. 76 at 6, 11−12. They further argue that Advantageous' claim should be dismissed because it failed to name a necessary and indispensable party: New Mexico's Human Services Department[7] ("HSD"). Advantageous correctly asserts that a § 1983 claim must be brought against persons in their individual capacities, and that it was prohibited from bringing suit against the State or any of its agencies or employees in their official capacities. Advantageous further argues that neither HSD nor the State nor any of its agencies are indispensable parties.

---

[6] The State Defendants additionally argue, without citation to any authority, that "[n]ot naming the State or any of the agencies places a substantial burden on the named Defendants if damages are awarded in this case in that the Defendants will be personally responsible for those damages." Doc. 76 at 11. This, of course, is not true. Under New Mexico law, "[a] governmental entity shall pay any settlement or any final judgment entered against a public employee for . . . a violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States . . . that occurred while the public employee was acting within the scope of his duty." N.M. STAT. ANN. § 41-4-4(D)(2). Further, "[a] governmental entity shall pay any award for punitive or exemplary damages awarded against a public employee under the substantive law of . . . the United States of America, if the public employee was acting within the scope of his duty." N.M. STAT. ANN. § 41-4-4(C).

[7] The State Defendants refer to HSD as the Human Services *Division*. *See* Doc. 76 at 12. The Medicaid Provider Act, however, refers to the Human Services *Department*. N.M. STAT. ANN. § 27-11-2(A).

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Moreover, the Eleventh Amendment protects States and their agencies from claims under § 1983. *See id.* at 70−71. "[S]tate sovereign immunity applies to any action brought against a state in federal court, including suits initiated by a state's own citizens." *Steadfast Ins. Co. v. Agric. Ins. Co.,* 507 F.3d 1250, 1252 (10th Cir. 2007). "[B]ecause an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity, the Eleventh Amendment provides immunity when state officials are sued for damages in their official capacity." *Peterson v. Martinez,* 707 F.3d 1197, 1205 (10th Cir. 2013) (quotation and alteration omitted). Thus, Advantageous correctly sued the individual defendants in their individual capacities.

In essence, the State Defendants argue that "Plaintiff sued the wrong party"; they believe that Advantageous should have sued HSD because only "HSD . . . could have withheld payments, which are the acts and damages [of which Advantageous] complains." Doc. 91 at 3. "The proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). The State Defendants have wholly failed to meet their burden here. Without citation to any legal authority other than FED. R. CIV. P. 19(b), and without producing any evidence, they simply assert in their motion that only HSD "had any power or authority to seize or withhold funds." Doc. 76 at 12. In their reply, the State Defendants cite to N.M. STAT. ANN. § 27-11-3, which describes that acts that the Secretary of the Human Services Department may take to enforce the provisions of the Medicaid Provider

17

Act.  Although § 27-11-3(C)(1) provides that the Secretary may impose monetary penalties on a Medicaid provider for violating the Act in specified ways, it does not provide that the Secretary may withhold funds or seize funds from a Medicaid provider.  *See* N.M. STAT. ANN. § 27-11-3(C) (describing penalties under the Medicaid Provider Act).  The State Defendants have not demonstrated that HSD is a necessary party.

In addition, Advantageous accurately sets forth in its response the requirements for showing whether an absent party is necessary to the lawsuit under FED. R. CIV. P. 19(a).  *See* Doc. 87 at 4−7.  Advantageous then discusses each requirement and explains why that requirement is not met in this case.  *See id.*  Even in its reply, the State Defendants make no effort to rebut Advantageous' argument by addressing the specific requirements of Rule 19(a).  The State Defendants have failed to carry their burden of proving that Advantageous "sued the wrong party."  Doc. 91 at 3.  The Court therefore denies the State Defendants' motion to dismiss Advantageous' claim for failure to join a necessary party.

### IV.     Conclusion

For the foregoing reasons, the Court DENIES the State Defendants' Motion to Dismiss (Doc. 76).

IT IS SO ORDERED.

_____
Laura Fashing
United States Magistrate Judge

18